FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 19, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BOBBY LAYTHEN BINFORD,<br><br>    Plaintiff,<br><br>v.<br><br>TEDDIE ARMSTRONG and SHAWN GANNON,<br><br>    Defendants. | NO. 4:19-CV-05280-SAB<br><br>**ORDER DISMISSING ACTION**<br><br>1915(g) |

Before the Court is Plaintiff's First Amended Complaint[1] pursuant to 42 U.S.C. § 1983. ECF No. 14. Plaintiff, a prisoner at the Washington State Penitentiary, is proceeding *pro se* and *in forma pauperis;* Defendants have not been served.

Plaintiff seeks declaratory and injunctive relief, as well as $100,000.00 in punitive damages, $100,000.00 in compensatory damages, and "$100,000.00 declaratory" against each Defendant, claiming he was denied treatment for his bipolar and anxiety disorders and was denied a nighttime dose of a psychiatric

---

[1] The Complaint form is properly titled "First Amended Complaint," but the attached self-generated document Plaintiff references is titled "Second Amended Complaint," and consists of twelve pages, ECF No. 14 at 9-21.

ORDER DISMISSING ACTION -- 1

medication. ECF No. 14 at 9-10, 20. Plaintiff complains that he was also denied "postdeprivation procedures" in violation of due process. *Id.* at 10. He claims his rights under the Eighth, Eleventh, and Fourteenth Amendments were violated.

A prisoner asserting medical mistreatment or denial of medical care under the Eighth Amendment must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference exists when an official knows of and disregards a serious medical condition and the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. To demonstrate deliberate indifference under 42 U.S.C. § 1983, a prisoner must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Plaintiff asserts that he suffers from bipolar and anxiety disorders which Dr. Grubb treated from 2017 to 2019. ECF No. 14 at 10. He indicates that he has also been diagnosed with narcissistic and antisocial personality disorders. *Id.* at 11. Plaintiff states that he attempted suicide in 1999 by overdosing on "coindine" and in 2001 by slitting his wrists and cutting his throat and was confined in the Intensive Management Unit for suicidal ideation until December 2015. *Id.* He states that Dr. Smith treated him successfully for his bipolar and anxiety disorders for four years*. Id.*

Plaintiff asserts that he had to stop taking the following medications because the side-effects included suicide attempts, violence and suicidal ideations: "amitriptyline, tergretol, effexpr, zyprexa, remeron, risperidone, lithium and other mood stabilizers-atypical antipsychotics & antidepressants." *Id.* at 11. He claims Dr. Smith ordered that Plaintiff not be prescribed these types of medications because he could harm himself or others and this proscription was in his medical

ORDER DISMISSING ACTION -- 2

chart. *Id.*

Plaintiff asserts that in February 2019, Dr. Grubb prescribed "Kolonopin" on a schedule of six months "on" and six months "off," in addition to counseling. *Id.* at 11. Plaintiff contends that on an unspecified date ARNP Armstrong took over Dr. Grubb's caseload and "followed Dr. Grubb's orders concerning Plaintiff." *Id.* He asserts that ARNP Armstrong renewed a prescription for an attention disorder medication, "clonidine[2]," and knew of Plaintiff's violent reactions to the other medications listed above because Plaintiff repeatedly reminded Defendant Armstrong at every 40-minute consultation of the proscribed medications in his chart. *Id.*

Plaintiff states that during an appointment on July 10, 2019, he requested a renewed prescription for Kolonopin. *Id.* at 11. He states that Defendant Armstrong responded that she "does not prescribe this treatment," "the CRC [committee] would not approve it," and she "would not treat [Plaintiff] with medication" for his bipolar disorder. *Id.* at 11-12. Plaintiff states that when he attempted to counter her assertions, she terminated the meeting and asked Plaintiff to "please leave [her] office." *Id.* at 12.

If, as Plaintiff asserts, the Kolonopin prescription issued by Dr. Grubb in February 2019 was "on" for six months and then "off" for six months, *id.* at 11, then it cannot be inferred that a decision not to prescribe Kolonopin in July 2019 constitutes deliberate indifference to Plaintiff's serious medical needs. Furthermore, asking a patient who is arguing with her to "please leave [her] office," cannot be construed as an act of deliberate indifference to a serious

---

[2] Based on various spellings, it is unclear if this is the same medication, "coindine," on which Plaintiff claims he overdosed in 1999, or the Attention Deficit Disorder medication, "colondine," the 2 a.m. dose of which Defendant Armstrong discontinued while Plaintiff was temporarily housed in administrative segregation.

ORDER DISMISSING ACTION -- 3

medical need by a medical or mental health provider.

Plaintiff contends that he had thoughts of "killing [himself] all night and harming [himself] and others." *Id.* at 12. He does not state that he acted on these thoughts in July 2019 or sought mental health treatment for them. Rather, Plaintiff indicates that he filed a grievance. *Id.*

Plaintiff asserts that because he filed this grievance, Defendant Armstrong has prescribed medications that "have caused [him] violent reactions or suicide ideas and [he has] had to discontinue." *Id.* at 12. Plaintiff does not state what was prescribed or when[3], or any facts from which the Court could infer that Defendant Armstrong denied him treatment for specific suicidal ideations he reported to her. Rather, he states, "She prescribed [him] these medications for other disorders she felt was the cause of [his] symptoms." *Id.* He also admits that he has "agreed to take the medications until the symptoms of the medications she prescribed [him] for other diagnosis she felt warranted. [He] was led to believe they [were]

---

[3] Plaintiff identifies one medication, "Oxcarbazepine," which is not on the list of prohibited medications he provided, and which he states he discontinued at the advice of a "pill line nurse" on an unspecified date after he reported that it "trigger[ed] fear and violent reaction." ECF No. 14 at 12. Elsewhere, Plaintiff indicates Defendant Armstrong prescribed "Oxcargbazepine" at an in-person appointment on an unspecified date in 2020. *Id.* at 14. He then states he discontinued the medication on February 29, 2020. *Id.* According to Plaintiff, he also filed a Health Services Kite on February 29, 2020, asking to "please discontinue order" because the medication was making him "aggressive . . . though not now I'm off from taking [it]," and Defendant Armstrong discontinued the order on March 3, 2020. *Id.* Plaintiff asserts that he had not been scheduled to see Defendant Armstrong as of the date he filed his amended complaint which he notes was May 27, 2020. *Id.* at 12. It is unclear how these assertions, or any allegations concerning treatment between February 2020 and June 2020, show that named Defendants were deliberately indifferent to Plaintiff's serious medical needs prior to the submission of the initial complaint on December 11, 2019, and which Plaintiff was instructed to amend to state a claim upon which relief could be granted.

ORDER DISMISSING ACTION -- 4

medications for bipolar disorder and agreed to take them because [he] trusted her." *Id.* While it is unclear what Plaintiff is alleging, his assertions are insufficient to state either a claim of retaliation or deliberate indifference to his serious medical needs.

Next, Plaintiff complains that Defendant Armstrong "canceled" a 2 a.m. dose of "colondine," a medication previously prescribed by Dr. Grubb for Attention Deficit Disorder, while Plaintiff was temporarily housed in administrative segregation from August 9 to 13, 2019. ECF No. 14 at 13. Elsewhere, Plaintiff states that he was "taking Colondine medication for anxiety" and/or "'Clondine' (A[n] anti-Anxiety medication) on August 8, 2019. *Id.* at 15. According to Plaintiff's allegations above, Defendant Armstrong was the last person to prescribe "clonidine." *Id.* at 12.

Plaintiff complains that, after bringing Plaintiff one dose of the medication, Defendant R.N. Shawn Gannon requested its discontinuation. *Id.* at 13. Plaintiff argues this was not the "least restrictive means" and he should have been transferred to an "ad-seg security cell" in the "mental health ward or lock up units in the hospital." *Id.* Elsewhere, Plaintiff indicates the last dose was provided on August 10, 2019, at which time Defendant Gannon allegedly asked, "Did you stay up all night just to get me over here?" and in response to Plaintiff's assertion that he was experiencing "anxiety and depression problems," Defendant Gannon allegedly stated, "I am going to the provider and cancle [sic] this because we don't run pill line at night." *Id.* at 15-16.

Plaintiff asserts that in response to his subsequent requests over the next five days for the nighttime dose of "clonidine medication," he was told "R.N Gannon said it was discontinued." *Id.* at 16. Plaintiff asserts that a pill line nurse provided contrary information that "it was still a[n] active order for the a.m. medication, but he stopped asking when he received a Health Services Kite on August 13, 2019.

ORDER DISMISSING ACTION -- 5

Accepting these allegations as true, the Court is unable to infer that Defendant Gannon's action in requesting the discontinuation of a nighttime medication because the pill line is not "run" at night constitutes deliberate indifference to Plaintiff's serious medical needs. Plaintiff does not state the health effects he suffered from this discontinuation of a nighttime dose of medication in August 2019.

Plaintiff asserts that Defendant Armstrong issued a health service kite on August 13, 2019, stating, "I have discontinued your clonidine 0.2mg. at bedtime due to the needs of the facility and the fact pill line does not occur on an as-needed basis." *Id.* at 13. Plaintiff contends that this is a "reversal" of Dr. Grubb's "prescribed professional treatment . . . for plaintiff's symptoms of anxiety at night." *Id.* Plaintiff complains that Defendant Armstrong issued another medical kite on August 13, 2019, stating, "Additionally, I have reviewed the evidence regarding taking clonidine on an as-needed basis and cannot continue prescribing this to you in this manner. Doing so puts you at high risk of having rebound hypertension, and consequently cardiac issues." *Id.* at 13, 16, 19. Defendant Armstrong also allegedly stated on this health care kite that: "I have informed scheduling you reside in IMU-N at this time and have requested you be scheduled to be seen by a psychiatric prescriber, as IMU-N are not areas of the prison I provide coverage." *Id.* at 19.

Plaintiff states that on August 16[4], 2019, Dr. Grubb, who had returned to temporarily fill a Mental Health Provider position in the IMU, ordered a 7-day supply of "Klonopin." ECF No. 14 at 16. He does not state that Dr. Grubb agreed to re-instate the night-time dose of clonidine. Plaintiff complains the "Klonopin" prescription was discontinued after five days, and he was told unspecified "they"

---

[4] Plaintiff provides the date of August 15, 2019, elsewhere in his First Amended Complaint, ECF No. 14 at 19.

ORDER DISMISSING ACTION -- 6

"ran out." *Id.* Plaintiff asserts that when he asked the pill line nurse to ask the provider for a substitute, he was told there was no provider at that time. *Id.* Plaintiff speculates, "This is the direct result of Defendant's [sic] canceling the prescriptions that the RN's Opinion was different opinion then the Doctors[sic] Orders and thus personally had the medication discontinues again." *Id.* at 17. It is unclear what Plaintiff is asserting, but he has failed to present facts sufficient to state an Eighth Amendment claim of deliberate indifference to a serious medical need against the identified Defendants.

Elsewhere, Plaintiff asserts that Defendant Armstrong "had the order cancelled 4 days into dispensing the Klonidine prescribed by Dr. Grubb." *Id.* at 19. If, as Plaintiff alleges, Defendant Armstrong advised him on August 13, 2019 that she did not provide coverage in IMU North where Plaintiff was then housed, it is unclear why or how she would then cancel a prescription issued by another doctor in August 2019. Plaintiff presents no facts to support his conclusory assertion that Defendant Armstrong cancelled the prescription issued on August 15, or August 16, 2019 by Dr. Grubb. Because Plaintiff has also asserted that the pharmacy "ran out" of "Klonidine," his unsupported speculations are insufficient to state a claim upon which relief may be granted.

Plaintiff asserts that he had an appointment scheduled with Defendant Armstrong on an unspecified date in August 2019. *Id.* at 15. He complains that due to his hearing impairment, he did not hear the "call" and "missed the gate." *Id.* Because he missed this appointment, he states that Defendant Armstrong discontinued a "dose of nighttime Keep on Person medications" that was reinstated at a subsequent appointment. *Id.* Plaintiff contends the temporary discontinuation of the medication dose was "punishment" for missing the appointment, which he claims was not his fault. *Id.*

//

ORDER DISMISSING ACTION -- 7

The Court can infer no "ayptical and significant hardship" from the temporary discontinuation of a nighttime dose of a medication. Plaintiff does not state the length of the discontinuation or what harm resulted to his health. Based on the facts presented, Plaintiff's allegations are insufficient to invoke procedural due process protections under *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995). It is unclear on what basis Plaintiff is asserting an Eleventh Amendment violation.

Plaintiff also asserts that he requested an appointment with Dr. Grubb on September 9, 2019, seeking "Bi-Polar and manic Depression follow-up." *Id.* at 17. Plaintiff initially states another "Psych Associate" who is not named as a Defendant to this action, delayed his request until September 23, 2019. *Id.* Plaintiff asserts his specific kite request was not addressed, although he claims the "delay" was "forwarded" to his "assigned therapist to address." *Id.* Elsewhere, Plaintiff alleges that his medical kite was re-routed to Defendant Armstrong. *Id.* at 19. It is unclear what Plaintiff is asserting or how this supports a claim of deliberate indifference to his serious medical needs by named Defendants.

The Court assumes Plaintiff's mental health disorders constitute serious medical needs. Plaintiff, however, has failed to present facts from which an inference could be made that identified Defendants were deliberately indifferent to those needs. The fact Defendant Armstrong denied Plaintiff's request for "Kolonopin" and asked him to leave her office on July 10, 2019, and then discontinued a nighttime dose of an attention deficit disorder and/or anxiety medication in August 2019, based on unit concerns and her own research that the medication could cause cardiac issues, do not support Plaintiff's assertions that Eighth Amendment violations occurred. Again, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

ORDER DISMISSING ACTION -- 8

Plaintiff asserts that at his last appointment with Defendant Armstrong on June 1, 2020, they discussed a mood stabilizer medication, tergatal. ECF No. 14 at 18. Plaintiff states that when he requested "another outside opinion or treatment," Defendant Armstrong agreed to take his request to her supervisors. The Court is unable to infer deliberate indifference to his serious medical needs from the facts Plaintiff presents.

Although granted the opportunity to amend, the allegations in the First Amended Complaint are insufficient to state a plausible claim for relief against the named Defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court finds that further amendment would be futile. Accordingly, **IT IS ORDERED** this action is **DISMISSED** with prejudice for failure to state a claim against identified Defendants upon which relief may be granted. 28 U.S. C. §§ 1915(e)(2) and 1915A(b)(1).

//
//
//
//
//
//
//
//
//
//
//
//
//
//

ORDER DISMISSING ACTION -- 9

Pursuant to 28 U.S.C. § 1915(g), enacted April 26, 1996, a prisoner who brings three or more civil actions or appeals which are dismissed as frivolous or for failure to state a claim will be precluded from bringing any other civil action or appeal *in forma pauperis* "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). <u>Plaintiff is advised to read the statutory provisions under 28 U.S.C. § 1915. This dismissal of Plaintiff's complaint may count as one of the three dismissals allowed by 28 U.S.C. § 1915(g) and may adversely affect his ability to file future claims.</u>

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order, enter judgment, provide copies to Plaintiff at his last known address, and close the file. The Clerk of Court is directed to forward a copy of this Order to the Office of the Attorney General of Washington, Corrections Division. The Court certifies any appeal of this dismissal would not be taken in good faith.

**DATED** this 19th day of August 2020.



Stanley A. Bastian
Chief United States District Judge

ORDER DISMISSING ACTION -- 10