FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 23, 2021

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BOBBY LAYTHEN BINFORD,
Plaintiff,
v.

TEDDIE[1] ARMSTRONG and SHAWN GANNON,
Defendants.

No. 4:19-CV-05280-SAB

**ORDER DISMISSING ACTION**

Before the Court is Plaintiff's Second Amended Complaint pursuant to 42 U.S.C. § 1983. ECF No. 30. On July 20, 2021, following remand from the Ninth Circuit Court of Appeals, the Court granted Plaintiff a second opportunity to amend or voluntarily dismiss. ECF No. 29. Plaintiff, a prisoner at the Washington

[1] Plaintiff spells this person's name as both Teddie and Teddi and the initials provided after the name are sometimes APRN, APNR and ARNP. ECF No. 30 at 1, 3 and 5. This person is identified as a Nurse Practitioner responsible for prescribing psychiatric medications. Defendant Shawn Gannon, RN, is identified as a registered nurse who is responsible for dispensing medications to prisoners. *Id.* at 5.

State Penitentiary ("WSP"), is proceeding *pro se* and *in forma pauperis;* Defendants have not been served.

Plaintiff seeks injunctive relief and $300,000.00 in monetary damages from each Defendant for alleged Eighth, Eleventh, and Fourteenth Amendment violations. ECF No. 30 at 15. Elsewhere, Plaintiff states that he is seeking $2,000,000.00 in monetary damages against each Defendant and declaratory relief for alleged violations of his Eighth and Fourteenth Amendment rights. *Id.* at 5. He claims that Defendants Armstrong and Gannon denied him "treatment for anti-axority mental health disorder & dispense his psychiatric medication" without providing "postdeprivation procedures." ECF No. 30 at 5.

Although granted several opportunities to present facts showing that Defendants were deliberately indifferent to his serious mental health issues, Plaintiff has failed to do so. Liberally construing the Second Amended Complaint[2] in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to cure the deficiencies of his prior complaints and that he has failed to state a claim upon which relief may be granted.

## ELEVENTH AMENDMENT

Plaintiff asks the Court to find that Defendants violated his "11th Amendment rights to the United States Constitution." ECF No. 30 at 15. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This provision involves the sovereign immunity of states. The Court cannot discern how the identified

[2] While this document is labeled Second Amended Complaint, it is the fourth complaint filed in this action. *See* ECF Nos. 1, 14, 27 and 30.

Defendants could have violated the Eleventh Amendment. Therefore, Plaintiff's request that this Court find a violation of the Eleventh Amendment is denied.

**FOURTEENTH AMENDMENT**

The medical care that a prisoner receives is evaluated under the Eighth Amendment of the U.S. Constitution. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). To the extent Plaintiff is asserting an entitlement to "postdeprivation processes" under the Fourteenth Amendment regarding the medical treatment he received, this assertion has no basis in law or fact. Plaintiff has failed to state any facts supporting a Fourteenth Amendment violation. *See Sandin v. Conner,* 515 U.S. 472, 483–84 (1995).

**PLAINTIFF'S ALLEGATIONS**

In Count I, Plaintiff claims that Defendant Armstrong was deliberately indifferent to his serious medical need in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. ECF No. 30 at 4. Plaintiff claims that he suffers from Bipolar disorder I and that, between 2011 and 2019, Dr. Grub—who is not named as a Defendant to this action—treated him for this condition. *Id.* at 6. Plaintiff asserts that the "CRC Committee," presumably the Care Review Committee, approved the treatment. *Id*.

Plaintiff states that when Dr. Grub's contract ran out, Plaintiff was re-assigned to Defendant Armstrong's case load. ECF No. 30 at 6. Plaintiff states that during a January/February 2019 mental health appointment, Defendant Armstrong "signed off on all medications and treatment" for him and continued to "sign off" on the prior physician's treatment plan until July 8, 2019. *Id.*

Plaintiff asserts that on July 8, 2019, Defendant Armstrong "denied [him] any treatment for bipolar disorder I." ECF No. 30 at 6. Plaintiff states that he

described his bipolar symptoms to Defendant Armstrong, which included the following: interference with his ability to follow simple directions; lack of sleep; hearing voices; difficulty paying attention; lack of motivation; irritability and intolerance; inability to interact with others; high anxiety and energy inhibiting ability to sit still; "dreams of death and dieing [sic]"; and "thoughts of suicide but not presently." ECF No. 30 at 6. Plaintiff complains that Defendant Armstrong advised him that she would not be prescribing the same treatment as Dr. Grub—and, when Plaintiff argued that she had been continuing the treatment already approved by the CRC, she told Plaintiff that she would not approve the treatment plan. *Id.* Plaintiff avers that when he asked, "What am I cured then?" Defendant Armstrong stated that she was not treating him for bipolar and ordered Plaintiff to leave her office. ECF No. 30 at 6. Plaintiff states that as he was leaving, Defendant Armstrong issued another directive to leave, and he stated, "I only want to be treated for my bipolarism." *Id.*

Although Plaintiff describes the symptoms that he attributes to Bipolar Disorder I, ECF No. 30 at 6, he presents no facts showing when and if he was diagnosed with Bipolar Disorder I. Indeed, the only document attached to the Second Amended Complaint containing any reference to Bipolar Disorder lists it under "Axis 1" and modifies it as "unspecified." ECF No. 30-1 at 8. This document is a Multidisciplinary Team Care Review from 2001 indicating that Plaintiff was sent to the WSP from the Airway Heights Corrections Center more than 20 years ago to prevent self-harm and because he was suspected of planning an escape. *Id.* Plaintiff asserts throughout his Second Amended Complaint that Defendant Armstrong provided no medication to treat his bipolar disorder. ECF No. 30 at 6–7.

Plaintiff states that by July 8, 2019, Defendant Armstrong had interviewed him for a total of two hours, conducted no tests, and had "only the records before

her." *Id.* at 6. Plaintiff declares that he had informed Defendant Armstrong during unspecified mental health appointments that a Medical Supervisor "documented in [Plaintiff's] chart as a standing order not to prescribe [Plaintiff] the class of drugs known as psychotropic & antipsychotic." *Id.* at 6–7.

Plaintiff complains that Defendant Armstrong prescribed these types of drugs "at leas [sic] three times between July 8, 2018 to June 10, 2020[,]" "despite being aware of her supervisors [sic] Order not to because they cause suicide and or Violent thought reactions from plaintiff." *Id.* at 7. Plaintiff states that he was told that "the prescription was not the same kinds but in fact they were," and this resulted in "fights and thought of suicide, aggression with other inmates and mental anguish caused by the effects of plaintiff's mind fighting the medications perscrible [sic] by Defendant Armstrong" *Id.*

Plaintiff does not specify when these medications were prescribed or the circumstances surrounding the administration of these drugs, nor does he explain what harm he suffered on these three occasions over a nearly two-year span. He makes no allegation that Defendant Armstrong denied him treatment for any resulting aggression or asserted suicidal ideation. Rather he refers the Court to attached Health Services Kites. ECF No. 30 at 7. A review of these attached Health Services Kites reveals no facts supporting a claim of deliberate indifference to Plaintiff's serious mental health needs. *See* ECF No. 30-1 at 2–4, 9–12.

Rather, they reveal that in August 2019, Defendant Armstrong scheduled Plaintiff to be seen by a psychiatric provider after discontinuing Clonidine on an "as-needed" basis due to the needs of the facility and recent findings concerning prescribing the medication in that manner. ECF No. 30-1 at 2. In November 2019, Defendant Armstrong addressed Plaintiff's failure to attend a scheduled appointment, advised him of a change of the dosage of Clonidine, warned him that medications may be discontinued if he did not attend scheduled appointments, and

advised that his participation in mental health evaluations and follow-up care was necessary for the continued prescription of psychotropic medication. *Id.* at 4.

In March 2020, Defendant Armstrong discontinued oxcarbazepine at Plaintiff's request. *Id.* at 11. In June 2020, Defendant Armstrong consulted with the supervisory clinician at Plaintiff's request and offered Plaintiff the option of treatment with a particular medication and indicated that a routine appointment would be scheduled if Plaintiff did not respond. *Id.* at 3. The Court can infer no deliberate indifference to serious medical needs from these responses.

Another Health Service Kite is difficult to read but appears to concern Plaintiff's request for treatment for broken ribs in September 2019, with a response that "[t]he provider has ordered imaging . . . . " ECF No. 30-1 at 9. Plaintiff does not identify who his provider was while he was in the IMU in September 2019. ECF No. 30 at 11. The Mental Health box is notably left unchecked. ECF No. 30-1 at 9. The next Health Service Kite is dated September 30, 2019, and shows that x-rays were taken, revealing a rib fracture, and that a five-day prescription for pain medication was ordered, but advising Plaintiff the pain would "likely be longer as these take a month or more to heal." *Id.* at 10. These kites were neither addressed to Defendant Armstrong, nor responded to by her. Therefore, the Court cannot infer that Defendant Armstrong was involved in the care of Plaintiff's ribs in 2019.

The last Health Services Kite is Plaintiff's September 9, 2019 request for an appointment with Dr. Grubb.[3] A Psych Associate named E. Erbenich responded on September 23, 2019, advising Plaintiff that "this message" was forwarded to Plaintiff's "assigned therapist to address." ECF No. 30-1 at 12. Again, this kite is neither addressed to Defendant Armstrong, nor responded to by her. For these

---

[3] Plaintiff's spelling of names is not consistent. Earlier, he spelled this physician's name as "Grub."

reasons and because Defendant Armstrong had already advised Plaintiff that she did not provide coverage in the IMU, *id.* at 2, the Court cannot infer that Defendant Armstrong was involved in Plaintiff's psychiatric care in September 2019.

In reference to his Health Services Kites, Plaintiff states, "I think this was done for malace [sic] by her expermental [sic] prescribing [sic] drugs and not telling me they were a class of drugs the supervisor ordered for providers not to administer Plaintiff." ECF No. 30 at 7. Plaintiff presents no facts from which the Court could infer that experimenting with treatments to ascertain what is presently effective and tolerated is medically unacceptable. Plaintiff admits that Defendant Armstrong has discontinued medications when he has asserted adverse side effects. *See* ECF No. 30 at 8 and ECF No.30-1 at 11. Plaintiff presents no facts from which the Court could infer that Defendant Armstrong maliciously prescribed medications. Plaintiff's speculation is insufficient to state a constitutional claim.

Plaintiff complains that unspecified medications were not prescribed for his bipolar condition, although he was "led to believe" that they were for treatment of his bipolar condition between 2018 and August 1, 2021. ECF No. 30 at 7. Plaintiff asserts that Defendant Armstrong provided no medication for his bipolar condition. *Id.* Plaintiff presents no facts indicating that a medication was medically necessary to treat his bipolar condition.

Plaintiff states that in September 2019, he was "not getting along with others" and "had broken [his] ribs." ECF No. 30 at 7. He avers that in response to his Health Services Kite complaining of the pain in his ribs on September 26, 2019, he was told, "[t]he provider has ordered imagry [sic] and will move forward with treatment after images have been obtained if necessary." *Id.* Plaintiff does not identify who his provider was in September 2019, but he complains that he did not receive an interview for the "cause," presumably his inability to get along with others. *Id.* Plaintiff makes no assertion that he specifically sought mental health

treatment at that time and that an identified Defendant denied him mental health treatment.

Plaintiff indicates that on September 29, 2019, he was advised that x-rays revealed a rib fracture, pain medication had been ordered, and the fracture would likely take more than a month to heal. ECF No. 3 at 7. Plaintiff makes no allegation that he was denied the prescribed pain medication or if so, by whom.

Rather, Plaintiff states, "PLAINTIFF was never seen in person to answer how or examined in person or follow-up on this injury or cause. Due to the side effects of bipolar disorder I – as the direct cause of no treatment and confusion and fear as well as all the other symptoms of non-treatment, was a direct result of Defendants [sic] lack of or mistreatment of PLAINTIFF's indifference to serious mental health medical needs. This is not an isolated incident as plaintiff further, described a total lack of being able to function with his cell partner(s) between the periods described in this complaint." ECF No. 30 at 7–8. Again, Plaintiff makes no assertion that he specifically requested mental health treatment for his behavior that resulted in broken ribs or his difficulties with cellmates, or that identified Defendants denied him such treatment. Plaintiff's general allegations that the failure to effectively treat his bipolar condition contributed to his social problems is insufficient to show deliberate indifference to his serious mental health needs.

Plaintiff states that on March 3, 2020, after Plaintiff sent Defendant Armstrong a "health care kite" asking her to take him off "oxcarbazepine because it made [him] 'very aggressive and has increased [his] anger emotion – though not now [he is] off from taking it causes [him] harm to other and possibly [him]self," she discontinued the drug. ECF No. 30 at 8. Apparently, this drug was prescribed to "benefit" nerve damage in Plaintiff's legs. *Id.* Plaintiff complains that Defendant Armstrong "never scheduled any immediate appointment for months later." *Id.* Since Plaintiff indicated on his kite that his aggression subsided with his own

discontinuation of the medication and Defendant Armstrong discontinued it at his request, the Court cannot infer from the facts presented that Defendant Armstrong was deliberately indifferent to Plaintiff's serious medical/mental health needs in March 2020, more than two months after Plaintiff had filed his initial complaint in this action.

Plaintiff avers that on September 9, 2019, he had requested an appointment with another doctor to "follow up" concerning his "bipolar and manic depression." ECF No. 30 at 8. He complains that fourteen days later, a "MSW Psych Associate" advised Plaintiff that his message had been forwarded to his therapist to address. *Id.* Plaintiff states, "Plaintiff was not seen as a result of this submission of a 'Health Service KITE'. By Defendant or any one else." ECF No. 30 at 8. However, Plaintiff makes no allegation that the kite was addressed to or reviewed by either of the named Defendants. The Court cannot infer from these assertions that either Defendant was deliberately indifferent to his serious medical needs in September 2019.

Plaintiff states that in a Level III response to a grievance he filed against Defendant Armstrong regarding his bipolar issue he was advised on October 29, 2019, that "appropriate care is being provided per patient care protocols." ECF No. 30 at 8. Although granted numerous opportunities to amend, Plaintiff has failed to present facts supporting a claim of deliberate indifference to his serious medical needs.

Plaintiff asserts that on June 10, 2020, nearly six months after he filed this action, Defendant Armstrong prescribed antipsychotic medications that caused unspecified "dangerous side effects." ECF No. 30 at 9. Plaintiff claims that she falsely accused Plaintiff of requesting a particular medication to treat his bipolar condition and then allegedly blamed Plaintiff for not treating him. *Id.* These bald accusations, without supporting facts, do not state a claim of deliberate

indifference to a serious medical need.

Plaintiff challenges the limited time that Defendant Armstrong has interviewed him, which he estimates at four hours. ECF No. 30 at 9. He complains that she has conducted "no testing to draw her non-treatment and treatment based on her diagnosis and prescribing medications." *Id.* Plaintiff identifies no testing that is medically necessary. Plaintiff's allegations are insufficient to show deliberate indifference to a serious medical need.

Plaintiff asserts that on July 20 of an unspecified year, a fellow prisoner died while they were practicing their "Native American Sweat-Lodge religion." ECF No. 30 at 10. Plaintiff indicates that two days after the incident, he requested "a medical emergancy [sic]" and was seen by a mental health counselor. *Id.* Plaintiff contends, that although he has asked to see his medical provider, Defendant Armstrong, on an emergency basis, she had not "correct[ed] his present medication treatment," as of the date he filed his Second Amended Complaint. *Id.*

Plaintiff indicates that when he declared a mental health emergency, he was seen by a mental health counselor. If he required follow-up care for his grief and anxiety, then he should appropriately seek such care. Plaintiff's conclusory assertion that "Defendant's [sic] ARMSTRON'S [sic] lack of care to plaintiff Binfords [sic] serious medical need is gross negligence amounts to deliberate indifference to Plaintiff's serious medical needs," without supporting factual allegations, is insufficient to state an Eighth Amendment claim against Defendant Armstrong. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In Count II, Plaintiff claims that Defendants Armstrong and RN Shawn Gannon violated his Eighth and Fourteenth Amendment rights by cancelling a medication for a non-medical reason. ECF No. 30 at 17. Plaintiff asserts that on August 9, 2019, he was placed in administrative segregation for 47 days. He states that on August 10, 2019, he requested a nighttime dose of Clonidine to alleviate his

"symptoms." ECF No. 30 at 11.

Plaintiff's general reference to all the symptoms he had previously described throughout his Second Amended Complaint is insufficient to show that the symptoms he experienced in August 2019 were a serious medical need. *Id.* at 11. Plaintiff states that he told Defendant Gannon that he needed the Clonidine for "anxiety and depression problems." *Id.* at 12.

To establish a violation of the Eighth Amendment, Plaintiff must allege facts showing a "serious medical need," and that Defendants' response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need exists if the failure to treat could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A difference of opinion over proper medical treatment does not constitute deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of the defendant and resulting harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985). Plaintiff's conclusory allegations are insufficient to show deliberate indifference to a serious medical need.

Plaintiff complains that when Defendant Gannon came to his door on August 10, 2019, he stated, "Did you stay up all night just to get me over here[?] I am going to talk to the provider to discontinue the meds because we don't run a regular pill line at this time." ECF No. 30 at 11. Plaintiff counters that the pill line in the Intensive Management Unit did run on an "as needed" basis, but Defendant Gannon did not want to bring Plaintiff his medication during the night. *Id.* at 12. Plaintiff asserts that Defendant Gannon had no authority to seek its discontinuation but told the booth officer to inform Plaintiff that a nighttime dose "was canceled." *Id*. Plaintiff claims that a daytime pill line nurse told Plaintiff that it was not

canceled. *Id.*

Plaintiff states that on a Health Services Kite dated August 13, 2019, Defendant Armstrong advised: "I have discontinued you[r] clonidine 0.2mg at bedtime due to the needs of the facility and the fact pill line does not occur on an as [n]eeded basis. Additionally, I have reviewed the evidence regarding taking clonidine on an as needed basis and cannot continue prescribing this to you in this manner. Hypertension, and consequently cardiac issues. I HAVE INFORMED SCHEDULING YOU RESIDED IN IMU_N at this time and have requested you be seen by a psychiatric perscriber [sic], as IMU-N and IMU-S are not areas of the prison I provide coverage. Should you have further questions feel free to send me a kite." *Id.*

Plaintiff states that on November 8, 2019, Defendant Armstrong wrote, " . . . I have changed the bedtime clonidine dose to 0.2mg, as I am aware you have previously been taking an additional 0.2mg of clonidine in your cell in the middle of the night . . . ."*Id.* at 12. Plaintiff claims that this contradicted Defendant Armstrong's reasoning for discontinuing the "as needed" nighttime dose of Clonidine because it could cause "cardiac issues and rebound hypertension." *Id.* Plaintiff states that he has not had any mental health appointments with Defendant Armstrong since August 13, 2019. *Id.* Plaintiff does not state what harm resulted from the temporary suspension of Clonidine in August 2019.

Plaintiff avers that Dr. Grubb saw him on August 21, 2019, prescribed "Kolonpin" for 7 days as treatment for his "bipolar I Disorder," but "the order was cancled [sic] days into the treatment . . . ." ECF No. 30 at 12. Elsewhere, Plaintiff indicates that Dr. Grubb "came and [went] in the week of August, 2019[.]" *Id.* at 14.

Plaintiff contends that "Defendant Armstrong is the only provider that had the authority at WSP to cancel the order or to be consulted if the order for

medication was not in stock." *Id.* Plaintiff states a belief that "the out of stock for medication provided by the daytime escorting pill line was false information. Medical protocol and common sense say this is not the case." Plaintiff has not clearly asserted a claim for relief. His beliefs and speculations regarding the availability of a particular drug do not state a viable claim for relief. Plaintiff does not identify the harm cased from the discontinuation of "Kolonpin" and his general reference to prior numbered paragraphs in his Second Amended Complaint does not support a claim of present harm.

Plaintiff asserts that when he was told the "Klonipin[4]" was discontinued, he was also told that there was no provider in his administrative segregation unit. ECF No. 30 at 14. He avers that he filed a grievance that the grievance coordinator rejected three days later. *Id.* He does not state the content of the grievance or the response. The Court can infer no constitutional violation from the facts presented.

Although granted numerous opportunities to do so, Plaintiff has failed to present facts from which the Court could infer that either Defendant Gannon or Defendant Armstrong acted with deliberate indifference to his serious medical needs. A difference in medical judgment regarding the discontinuation of an "as needed" nighttime dose of Clonidine, even if based on non-medical concerns of the facility and without any resulting harm, does not show deliberate indifference to a serious medical need.

Plaintiff identifies no ill effects from the temporary suspension of Clonidine. He presents no facts showing that Defendant Armstrong denied him treatment for any specific suicidal ideations that he reported to her. Furthermore, Plaintiff's

---

[4] Plaintiff uses various spellings of "Klonipin," "Klonapin" and "Kolonpin" in reference to the drug Dr. Grubb prescribed on August 21, 2019. ECF No. 30 at 13–14.

speculation about a drug he was informed was "not in stock" does not support a constitutional claim. Plaintiff's bare allegations against the named Defendants are insufficient to state a claim for deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (holding that a prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it).

Although granted the opportunity to do so, Plaintiff has failed to present facts showing that Defendants Armstrong and Gannon denied him treatment for the health effects he reported to them, evidencing deliberate indifference to his serious mental health needs. He has alleged no facts showing what harm resulted to his health that was not otherwise subsequently addressed.

Therefore, **IT IS HEREBY ORDERED** this action is **DISMISSED** with prejudice for failure to state a claim against identified Defendants upon which relief may be granted. 28 U.S. C. §§ 1915(e)(2) and 1915A(b)(1).

Pursuant to 28 U.S.C. § 1915(g), enacted April 26, 1996, a prisoner who brings three or more civil actions or appeals which are dismissed as frivolous or for failure to state a claim will be precluded from bringing any other civil action or appeal *in forma pauperis* "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Plaintiff is advised to read the statutory provisions under 28 U.S.C. § 1915. This dismissal of Plaintiff's complaint may count as one of the three dismissals allowed by 28 U.S.C. § 1915(g) and may adversely affect his ability to file future claims.

//

//

//

//

//

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order, enter judgment, provide copies to Plaintiff at his last known address, and **close** the file. The Clerk of Court is directed to forward a copy of this Order to the Office of the Attorney General of Washington, Corrections Division. The Court certifies any appeal of this dismissal would not be taken in good faith.

**DATED** this 23rd day of August 2021

Stanley A. Bastian
Chief United States District Judge